IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PORSOUA HANG,

Plaintiff, No. CIV S-08-1166 DAD

v.

MICHAEL J. ASTRUE, Commissioner of Social Security, ORDER

Defendant.

_______________________________/

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion (Doc. No. 18) is denied, defendant's motion (Doc. No. 24) is granted, and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

On June 27, 2005, plaintiff applied for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act (Act), alleging disability beginning January 1, 2003. (Transcript (Tr.) at 48-52.) The application was denied initially on September 15, 2005, and upon reconsideration on November 19, 2005. (Tr. at 26-27, 33-45.) Plaintiff filed a timely request for a hearing. (Tr. at 31.) A hearing was held before an administrative law judge (ALJ)

on April 9, 2007, at which plaintiff was represented by a non-attorney representative and testified

through an interpreter.  (Tr. at 228-45.)  In a decision dated May 12, 2007, the ALJ determined

that plaintiff had not been disabled at any time through the date of the decision.  (Tr. at 11-21.)

The ALJ entered the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since June 27, 2005.
>
> 2.  The medical evidence establishes that the claimant has severe joint pain due to osteoarthritis, arthralgias, foot pain due to plantar fasciitis, a post traumatic stress disorder, and a major depressive disorder, moderate, recurrent.  However, she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 3.  The claimant's testimony concerning her limitations is not found to be fully credible for the reasons set forth in this decision, and is not supported by medical evidence contained in the record.
>
> 4.  The claimant has the retained residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk with normal breaks for a total of 4 hours in an eight-hour workday, and sit 6 hours in an eight-hour workday.  Nonexertionally, she is limited to the performance of simple, repetitive tasks involving unskilled entry-level work which does not involve frequent public contact or frequent contact with co-workers. (20 CFR 416.045).
>
> 5.  The claimant has performed no past relevant work.
>
> 6.  The claimant has the residual functional capacity to perform a limited range of light work and a full range of sedentary unskilled work on a sustained basis (20 CFR 416.967, 416.945(b)(c)).
>
> 7.  The claimant is 44 years of age, which is defined as a younger individual.  She has no educational background and is unable to read, write or communicate in the English language (20 CFR 416.963).
>
> 8.  In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

/////

9. In light of the claimant's residual functional capacity, age, education and work experience, section 416.969 of Regulations 16, and Rule 202.16 of Table No. 2 and Rule 201.23 of Table No. 1 of Appendix 2, Subpart P, Regulation No. 4, provide that she is not disabled.

10. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)[)].

(Tr. at 20-21.)

On June 23, 2007, plaintiff requested review of the ALJ's decision. (Tr. at 6.) The Appeals Council denied the request on March 24, 2008. (Tr. at 3-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 27, 2008.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations. Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances the following arguments in support of her motion for summary judgment: (1) the ALJ failed to credit plaintiff's testimony and third party statements regarding the nature and extent of plaintiff's functional limitations; (2) the ALJ failed to properly assess

plaintiff's residual functional capacity; and (3) the ALJ inappropriately utilized the grids and failed to secure the testimony of a vocational expert. These arguments are addressed below.

**I. Credibility Findings**

Plaintiff argues that the ALJ erred in finding that her allegations, as well as the third party statements from her sister-in-law, regarding plaintiff's symptoms and the limitations they placed upon her were exaggerated and less than fully credible.

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007); Reddick, 157 F.3d at 722; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Nonetheless, in evaluating a claimant's subjective testimony regarding the severity of her symptoms an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). "'[T]he ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter, 504 F.3d at 1036 (quoting Smolen, 80 F.3d at 1281). See also Morgan, 169 F.3d at 599 ("Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.").

The testimony of lay witnesses, including family members, about their own observations regarding the claimant's impairments must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Family members who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses

/////

to reject or discount the testimony of a lay witness, he must give reasons that are germane to that particular witness. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The determination of credibility and the resolution of conflicts in the testimony are functions of the ALJ acting on behalf of the Commissioner. Morgan, 169 F.3d at 599; Saelee, 94 F.3d at 522. In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Thus, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. Morgan, 169 F.3d at 599. The ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989). The ALJ may also rely, in part, on his own observations. See Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute his observations for medical diagnoses. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

The court finds that the credibility determination made by the ALJ in rejecting plaintiff's subjective complaints of her limitations and the similar report of her sister-in-law to be fully supported by the record. In this regard, the ALJ noted that despite plaintiff's report that she is unable to do anything because of pain and other conditions, there is no indication that any medical care provider has ever suggested that plaintiff obtain any treatment for her pain symptoms other than over the counter medications such as Motrin and Tylenol. (Tr. at 17.) The ALJ also observed that the evidence reflects that plaintiff has never been recommended for any more aggressive treatment, such as surgery or therapy, for any pain-producing condition, nor has she been referred to a pain clinic or to a specialist. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (considering claimant's conservative treatment as inconsistent with the debilitating condition claimed in upholding denial of benefits); Fair, 885 F.2d at 604 (same). The ALJ correctly stated that none of the medical records indicate that any physician has ever

/////

/////

imposed any restriction on plaintiff's daily activities due to her conditions.  (Id.)[1]  In his decision

the ALJ noted that, contrary to the claims of plaintiff and her sister-in-law that plaintiff's

activities are now quite limited, the medical evidence of record did not suggest an ongoing or

worsening condition of any kind.  (Id.)  The ALJ also detailed inconsistencies between plaintiff's

claim of complete inactivity and her own reports of engaging in significant daily activities.  (Tr.

at 17-18.)

In finding plaintiff's allegation of a totally disabling mental impairment to not be

fully supported by the objective medical, psychiatric and other evidence, the ALJ also gave clear

and convincing reasons for reaching his conclusion.  The ALJ found that plaintiff's claims of a

disabling mental impairment were not supported by the evidence of record.  (Tr. at 18.)  In this

regard, the ALJ noted that the consultative psychiatric examiner's observation that plaintiff had

neither received mental health treatment as of July of 2005 and had never been psychiatrically

hospitalized.  (Id.)[2]  As indicated by the ALJ, the consultative psychiatrist found that plaintiff's

"situational mood and anxiety problems would not prevent her from attending or completing a

simple job that she could do physically."  (Tr. at 121; see also tr. at 18.)  Moreover, the ALJ

observed, when plaintiff did seek mental health treatment in November of 2005, her symptoms of

---

[1]  The court recognizes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  See Reddick, 157 F.3d at 722.  See also Webb, 433 F. 3d at 688; Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  However, the extent of plaintiff's daily activities, particularly when considered in combination with the other evidence cited above, is probative of her ability to perform some work.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

[2]  The court also recognizes that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).  However, treatment notes indicate that doctors at the Sacramento County Adult Mental Health Services Clinic concluded that plaintiff suffered primarily from depression due to the stress of her home life which, along with her PTSD symptoms, was properly treated with medication which appeared to improve her condition.  (Tr. at 211, 213, 215, 217, 220, 222, 224.)  It is reasonable to infer that if plaintiff's mental impairments were so severe as to be debilitating, doctors at the clinic would have conducted a more formal mental status assessment or referred plaintiff for more aggressive treatment including psychotherapy and additional medication.  See Johnson, 60 F.3d at 1434; Fair, 885 F.2d at 604.

depression and anxiety improved and she was found to be clear, logical, with good cognition, insight and judgment. (Id.) Plaintiff's medical records therefore support the ALJ's findings.

As noted above, plaintiff also contests the ALJ's treatment of the third party function report from her sister-in-law. (See tr. at 67-75.) That third party report is virtually identical to plaintiff's own function report and supports plaintiff's position regarding the extent of her limitations. However, in accurately assessing the medical evidence as a whole, including the consultative internal medicine and psychiatric reports, plaintiff's treatment notes, and plaintiff's conservative care, the court finds that the ALJ also provided specific reasons for not fully crediting that third party report. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("In all, the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if he did not clearly link his determination to those reasons.").

Finally, the ALJ did not totally reject plaintiff's subjective complaints. In this regard, the ALJ found that plaintiff suffered from severe physical and mental impairments that made her capable of performing only a limited range of light work and a full range of sedentary unskilled work. Thus, the ALJ credited plaintiff's complaints regarding her symptoms and the limitations they placed upon her to an extent.

For these reasons the court finds that the ALJ fairly characterized the record and sufficiently stated specific, clear and convincing reasons for not fully crediting plaintiff's testimony regarding the severity of her symptoms and their debilitating effect. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998). Plaintiff's argument to the contrary must be rejected.

**II. Assessment of Residual Functional Capacity**

Plaintiff next argues that the ALJ failed to assess plaintiff's residual functional capacity (RFC) by not including therein a sit/stand option, manipulative limitations and illiteracy.

At step four of the sequential evaluation process, the ALJ must determine whether the claimant is capable of performing his past work. If the ALJ determines that the claimant is not capable of performing his past work, or if the claimant had no past relevant work, the ALJ

proceeds to step five to determine whether the claimant is capable of performing any other work. Both determinations are grounded on the claimant's residual functional capacity (RFC), which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). It is the duty of the ALJ to determine the RFC from the record. 20 C.F.R. § 416.946(c).

Here, the ALJ determined that plaintiff has the physical RFC to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk with normal breaks for a total of four hours in an eight-hour work day. (Tr. at 20.) The ALJ determined that plaintiff's non-exertional limitations allowed her to perform simple, repetitive tasks involving unskilled entry-level work which does not involve frequent public contact or frequent contact with co-workers. (Tr. at 18, 20.) The ALJ also found that plaintiff has no educational background and is unable to read, write or communicate in English. (Tr. at 20.) Based on this RFC, the ALJ concluded that plaintiff could perform a limited range of light work and a full range of sedentary unskilled work. (Id.)

The court concludes that substantial evidence supported the ALJ's determination of plaintiff's RFC. In this regard, the ALJ adopted virtually all of the limitations found by the consultative examiner, Satish Sharma, M.D., who provided an internal medicine evaluation of plaintiff. (Tr. at 146-52.) The only exception was the limitation of sitting to thirty minute intervals, which reviewing physician Janice Thornburg, M.D. did not include in her functional capacity assessment of plaintiff. (Tr. at 154-61.) That the ALJ chose to adopt Dr. Thornburg's assessment over that of Dr. Sharma's on this discreet issue was well within the ALJ's prerogative.[3] Sample v. Schweiker, 694 F.2d 639, 643 (9th Cir. 1982). Moreover, neither Dr. Sharma nor Dr. Thornburg found plaintiff to have any manipulative limitations. The court also

---

[3] As plaintiff notes, Dr. Sharma's report was based solely upon his examination of plaintiff and information provided by her through an interpreter. (Tr. at 146.) Dr. Thornburg's assessment was based upon a review of all available records, including Dr. Sharma's report. (Tr. at 154-161.)

notes that there was no evidence that plaintiff's medical treatment providers at the Sacramento Family Medical Clinic had documented her as suffering from any limitations. Finally, contrary to plaintiff's suggestion, the ALJ did include in his RFC that plaintiff was unable to read, write or communicate in English. Accordingly, the court concludes that the ALJ did not err in his assessment of plaintiff's RFC.

**III. Use of the Medical-Vocational Guidelines (The Grids)**

Lastly, plaintiff argues that the ALJ erred in applying the grids in finding a substantial number of jobs in the national economy that plaintiff could perform despite her limitations instead of securing the testimony of a Vocational Expert (VE). In this regard, plaintiff argues that the grids did not take into account her non-exertional limitations and that testimony from a VE was therefore required. Plaintiff suggests in conclusion that due to her "borderline age" she should have been found disabled even under the grids. Plaintiff's arguments are not persuasive in this regard.

After determining that plaintiff has performed no past relevant work, the ALJ proceeded to the fifth step of the sequential evaluation process. At this step, the Commissioner may satisfy his burden of showing that the claimant can perform other types of work in the national economy, given her age, education, and work experience, by either applying the Medical-Vocational Guidelines, if appropriate, or by taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

"The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart, 856 F.2d at 1340. The grids reflect "major functional and vocational patterns" and incorporate the analysis of critical vocational factors, i.e., age, education, and work experience, in combination with the individual's residual functional capacity. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). The grids may be utilized when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998). "When a claimant's nonexertional

limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . . In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities." Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human Svcs., 846 F.2d 573, 577 (9th Cir. 1988)).

Here, the ALJ determined that plaintiff had the residual functional capacity to perform a limited range of light work and a full range of sedentary unskilled work. (Tr. at 20.) That RFC assessment was reached with full consideration given to plaintiff's non-exertional limitations.[4] This was not a case where plaintiff's nonexertional limitations were sufficiently severe so as to significantly limit the range of work permitted by her exertional limitations, rendering the grids inapplicable. Rather, here the grids accurately and completely describe plaintiff's abilities and limitations as assessed by the consultative medical sources. Substantial evidence, comprised of the physicians' evaluations, supported the determination of plaintiff's RFC and the conclusion that her non-exertional limitations did not significantly limit the range of work permitted by her exertional abilities. Once that determination was made, the ALJ was not required to hear testimony from a vocational expert. Desrosiers, 846 F.2d at 577.

Moreover, as the ALJ correctly noted, the medical vocational guidelines indicate that individuals of plaintiff's profile will not be considered disabled. See 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.23 (an unskilled younger individual (18-49) who is illiterate or cannot communicate in English, but who can perform sedentary work, is not considered disabled); § 202.16 (an unskilled younger individual (18-49) who is illiterate or cannot communicate in English, but who can perform light work, is not considered disabled). The ALJ proceeded to

---

[4] As noted above, in his psychiatric evaluation of plaintiff Timothy Canty, M.D. assessed that from a psychiatric point of view she could do simple, repetitive work and that her mood and anxiety problems would not prevent her from attending or completing a simple job that she was able to do physically. (Tr. at 121.) Indeed, the ALJ's RFC limited plaintiff more in terms of contact with co-workers than Dr. Canty did in his assessment. (See tr. at 20, 121.)

identify three specific jobs listed in the Dictionary of Occupational Titles (DOT) that someone with plaintiff''s limitations could perform which exist in significant numbers. (Tr. at 19.)

Thus, the ALJ had a substantial basis for determining that an individual with plaintiff's limitations had a sufficient residual functional capacity to obtain work and was not disabled.

Finally, plaintiff suggests that because she turned 45 years of age a little over a month after the ALJ's decision, she should have been found disabled pursuant to 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.00(h) (providing that a finding of disabled is warranted for individuals ages 45-49 who are restricted to sedentary work, are unskilled, have no past relevant work, and are unable to communicate in English). Plaintiff did not qualify for a finding of disability pursuant to § 201.00(h) for two reasons. First, it is undisputed that she was 44 at the time of the administrative decision, not 45. Second, the ALJ's RFC assessment, which the court has found to be supported by substantial evidence in the record, concluded that she was not restricted to sedentary work but could perform a limited range of light work as well. (Tr. at 20.)

For these reasons, the court finds that plaintiff is not entitled to relief on her claim that the ALJ erred in using the grids instead of obtaining the testimony of a vocational expert.

**CONCLUSION**

The court's scope of review in considering decisions granting or denying Social Security benefits is limited. Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has mandated a very limited scope of judicial review of the Secretary's decisions granting or denying Social Security disability benefits.") It is not the court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's. Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987). If there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ may resolve a conflict among experts so long as there is "more than one rational interpretation of the evidence." Sprague, 812 F.2d at 1230. See also

/////

Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").

The record in this case contains some evidence of disability. However, there is substantial evidence of nondisability. The ALJ considered all of the evidence and set forth a rational interpretation of that evidence. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). The ALJ properly discharged his responsibilities of determining credibility and resolving any conflicts or ambiguities in the testimony and evidence. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

Accordingly, IT IS ORDERED that:

1. Plaintiff's March 6, 2009 motion for summary judgment (Doc. No. 18) is denied;

2. Defendant's June 19, 2009 cross-motion for summary judgment (Doc. No. 24) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: September 28, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.socsec/hang1166.order